1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**

7

**EASTERN DISTRICT OF CALIFORNIA**

8

9    **UNITED STATES OF AMERICA for the** )        **CIV-F-05-0319 AWI SMS**
     **use and benefit of KIRA, INC.,**       )
10                                             )        **ORDER RE: MOTION TO SET**
                      **Plaintiff,**           )        **ASIDE MARCH 6, 2007 ORDER**
11                                             )        **DISMISSING CASE FOR FAILURE**
            **v.**                             )        **TO PROSECUTE**
12                                             )
     **ACTUS LEND LEASE, LLC,**                )
13   **TRAVELERS CASUALTY AND**                )        (Docs. 29 and 32)
     **SURETY COMPANY OF AMERICA,**            )
14   **and THE CONTINENTAL INSURANCE**         )
     **COMPANY,**                              )
15                                             )
                      **Defendants.**          )
16   _____ )

17

18          Plaintiff ha made a motion to set aside the court's order dismissing the case and the

19   associated judgment. Docs. 26 and 27.  Defendants oppose the motion and have made a

20   countermotion to have a related arbitration proceeding between the parties dismissed. Doc. 29.

21   Separately, Defendants have made a motion for attorneys fees as the prevailing parties in the

22   case. Doc. 32.  All motions have been taken under submission without oral argument.

23

24                                      **I. History**

25          This dispute arises out of a contract for construction of a government-funded family

26   housing and community center located on the Lemoore Naval Air Station.  Defendant Actus

27   Lend Lease, LLC was the main contractor for the project and Plaintiff Kira, Inc. was a

28   subcontractor.  The Travelers Casualty and Surety Company of America and the Continental

                                              1

Insurance Company are sureties for Actus Lend Lease, LLC.  Plaintiff alleges that under the terms of the subcontracting agreement, it is owed approximately $2.4 million for extra work performed.  That amount has not been paid.  Plaintiff filed suit against Defendants on March 7, 2005.

The parties then stipulated in writing to handle the dispute through binding arbitration.  On June 10, 2005, the court issued an order staying the case pending the outcome of the arbitration.  The stipulation between the parties stated that "arbitration shall take place at a time and date agreeable between the parties but in no event later than May 20, 2006." Doc. 24, at 2:3-4.  There was no report from the parties for over a year.

On January 6, 2007, the court issued an order to show cause ("OSC") why the case should not be dismissed for lack of prosecution.  The OSC specified that any written opposition must be filed by February 26, 2007 and set a hearing for 1:30 PM on March 5, 2007.  Plaintiff neither filed any written response nor appeared at the hearing.  The court thereafter ordered the case dismissed for lack of prosecution on March 6, 2007 ("Order").

On April 2, 2007, Plaintiff filed the present motion to set aside the Order under Fed. R. Civ. Proc. 60(b)(1) on the basis of excusable neglect.  Plaintiff's law firm, McCormick Barstow LLC, argued there was no timely receipt of notice of the OSC, explaining that Joseph Becerra, the lead attorney in the case, had left the law firm and that electronic service was sent solely to a defunct e-mail address.  McCormick Barstow also said the underlying case, far from being abandoned, was proceeding through the arbitration process and the parties were in preparations for a second mediation.

Defendants filed an opposition on April 26, 2007, controverting McCormick Barstow's claim that it did not receive timely notice of the OSC.  First, Defendants note the OSC was electronically served to two e-mail addresses, one belonging to Mr. Becerra and one belonging to Brenda Scott, his secretary.  Ms. Scott remains employed by McCormick Barstow and the law firm has provided no explanation as to what happened to the e-mail sent to her.  Second, Keith Holland, an employee of the court's clerk's office, called Kurt Vote, the lead partner on the case on January 9, 2007.  Mr. Holland informed Mr. Vote that e-mail notice to Mr. Becerra's account

1  was being returned to the clerk's office as undeliverable.  Mr. Holland then forwarded notice of

2  the OSC to Mr. Vote, though that action was not recorded as formal service in the court's

3  records.

4          McCormick Barstow filed a reply on May 4, 2007.  Significantly, there was no attempt to

5  contest Defendants' facts concerning contact between the court's clerk's office and McCormick

6  Barstow staff.  Instead, Mr. Vote submitted a statement in which he states, "Although I proved to

7  be mistaken, I believed that our telephone conversation was sufficient notice as to the status of

8  the matter and that the hearing [for the OSC] would be taken off calendar. Had I understand [sic]

9  that our office still needed to file a formal status report with the Court or appear at the hearing, I

10  would have done so." Doc. 35, Vote Declaration, at 2:9-13.  The court notes that as of June 11,

11  2007, Mr. Becerra remains a noticed attorney and service continues to the defunct e-mail address.

12          Defendants stand on the Order and wish to proceed as the prevailing party in this

13  litigation.  As such, Defendants have made motions to have the ongoing arbitration dismissed

14  and for attorneys fees.

15

16                                   **II. Legal Standards**

17          A district court may relieve a party from a final order or judgment on grounds of: "(1)

18  mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by

19  due diligence could not have been discovered in time to move for a new trial under Rule 59(b);

20  (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other

21  misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied,

22  released, or discharged, or a prior judgment upon which it is based has been reversed or

23  otherwise vacated, or it is no longer equitable that the judgment should have prospective

24  application; or (6) any other reason justifying relief from the operation of the judgment." Fed. R.

25  Civ. Proc. 60(b).  "Motions for relief from judgment pursuant to Federal Rule of Civil Procedure

26  60(b) are addressed to the sound discretion of the district court." Barber v. Hawaii, 42 F.3d 1185,

27  1198 (9th Cir. 1994).

28          Motions for reconsideration are not the place for parties to make new arguments not

                                          3

1   raised in their original briefs. <u>Northwest Acceptance Corp. v. Lynnwood Equip., Inc.</u>, 841 F.2d

2   918, 925-6 (9th Cir. 1988).  Nor should reconsideration be used to ask the Court to rethink what

3   it has already thought. <u>United States v. Rezzonico</u>, 32 F.Supp.2d 1112, 1116 (D. Ariz. 1998).

4

5                                    **III. Discussion**

6          In this order, the court deals solely with the fact that Plaintiff did not respond to the OSC

7   and does not deal with the underlying merits concerning lack of prosecution in the case.  The

8   court issued the OSC on January 6, 2007, because there had been no filings since June 10, 2005.

9   The court wished solely to ascertain if the parties were still actively litigating the case.  As it is

10  clear that both sides are still pursuing the suit through alternate dispute resolution means, the

11  concerns that prompted the court to issue the OSC have been dissipated.  Had Plaintiff appeared

12  at the hearing on March 5, 2007 and explained that the arbitration proceedings were ongoing, the

13  case would never have been dismissed sua sponte.

14         In its initial notice of the motion, McCormick Barstow stated that "the dismissal was

15  entered through no fault of KIRA's counsel [McCormick Barstow]." Doc. 29, Notice, at 1:27-28.

16  The court begs to differ.  The law firm's assertion of no fault is not credible as the plain terms of

17  Plaintiff's argument for setting aside the Order is that failure to respond to the OSC is due to

18  neglect on the part of McCormick Barstow.  The court is further puzzled by McCormick

19  Barstow's assertions in its briefing of this motion.  McCormick Barstow initially contended the

20  following:

21              This action was erroneously dismissed as a result of a lapse in e-mail communication
            between the Court and KIRA's former counsel, Joseph R. Becerra, who departed the
22          McCormick, Barstow law firm more than a year ago. All of the Court's inquiries and
            notices of intent to dismiss this action were sent as part of the CM/ECF system to Mr.
23          Becerra's e-mail account, which had been closed upon his departure from McCormick,
            Barstow. As a result, the court concluded in error (by virtue of the lack of response from
24          Mr. Becerra) that this matter had been resolved.

25  Doc. 30, Brief, at 2:3-9.  McCormick Barstow argued it was not aware of the OSC hearing at all

26  since no one at the firm received notice of it, claiming "had the notices from the Court not been

27  sent solely to the closed e-mail account of Mr. Becerra, KIRA would have appeared at the

28  Court's hearing on March 5, 2007 and explained the status of the case." Doc. 30, Brief, at 10:2-4.

                                           **4**

In another formulation, McCormick Barstow stated, "Had KIRA received notice of the Court's hearing that was to take place on March 5, 2007...the status of the matter would have been adequately explained to this Court in a timely fashion." Doc. 30, Brief, at 3:12-15. The court notes that the filing in which McCormick Barstow made all of these assertions was electronically signed by Mr. Vote. Doc. 30, Brief, at 10:20-26.

Notwithstanding McCormick Barstow's protestations, Mr. Vote and Ms. Scott received notice of the OSC. The actual course of events has been outlined above. In fact, Defendants pointed out that materials filed with the court by McCormick Barstow as part of the initial motion included a copy of a March 6, 2007 e-mail sent by Mr. Holland to a McCormick Barstow attorney in which he wrote "I made sure [the notice of the OSC] was forwarded to appropriate counsel in your office, Kurt Vote, on January 9 due to the failure [of e-mail delivery] to Joe Becerra." Doc. 31, Ex. A.

The facts concerning communication between the court and the parties are generally undisputed. The one remaining point of contention is the content of the phone conversation between Mr. Vote and Mr. Holland. Assuming that Mr. Vote had a mistaken understanding arising out of that phone conversation, the circumstances justify setting aside the Order under Rule 60(b)(1) due to excusable neglect. In the alternative, even assuming Mr. Vote knew the OSC hearing would be held and ignored it completely, the court finds that setting aside the Order would be appropriate under Rule 60(b)(6) due to gross negligence on the part of McCormick Barstow.[1]

"[A]t least for purposes of Rule 60(b), 'excusable neglect' is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence" and not solely to factors beyond a party's or counsel's control. Pioneer Inv. Serv. Co. v. Brunswick

---

[1]Though Plaintiff's motion for reconsideration was solely based on arguments grounded in Rule 60(b)(1) and not Rule 60(b)(6), the court has the authority to sua sponte grant reconsideration as long as the parties have an opportunity to be heard. See Kingvision Pay-Per-View v. Lake Alice Bar, 168 F.3d 347, 352 (9th Cir. 1999) (noting a split in the federal circuits). As there is a live motion for reconsideration pursuant to Rule 60(b) that has been briefed by both sides, the court believes that due process is satisfied.

1  Assocs. P'ship, 507 U.S. 380, 394 (1993).  Mr. Vote's alleged misinterpretation of the phone

2  conversation would thus qualifies as neglect.  "The determination of whether neglect is excusable

3  is an equitable one that depends on at least four factors: (1) the danger of prejudice to the

4  opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the

5  reason for the delay; and (4) whether the movant acted in good faith." Bateman v. United States

6  Postal Serv., 231 F.3d 1220, 1223-4 (9th Cir. 2000), citing Pioneer Investment Services Co. v.

7  Brunswick Assocs. Ltd. Partnership, 507 U.S. 380, 395 (1993).  Again, looking at this motion

8  solely in regards to McCormick Barstow's failure to respond to the OSC, there has been no

9  prejudice and little delay.  The OSC was issued on January 6, 2007, and the hearing was on

10 March 5, 2007.  The current motion was filed on April 2, 2007.  As stated previously, the court

11 would not have been inclined to sua sponte dismiss the case for lack of prosecution had Plaintiff

12 shown up to demonstrate that it was actively involved in litigation.  Defendants have not in fact

13 demonstrated how setting aside the Order would delay the arbitration relative to the course of

14 events had Plaintiff responded to the OSC.  The Ninth Circuit has suggested "the mere possibility

15 of prejudice from delay, which is inherent in every case, is insufficient to require denial of a

16 60(b)(1) motion." Bateman v. United States Postal Serv., 231 F.3d 1220, 1225 (9th Cir. 2000),

17 quoting Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima, 776 F.2d 1277, 1280

18 (5th Cir. 1985).  The Ninth Circuit has recognized, "where the notice given a party about a

19 court-ordered filing deadline contains a 'dramatic ambiguity which could confuse even persons

20 experienced in bankruptcy,' it would be error to conclude that, absent prejudice to the other

21 party, failure to comply with the deadline was not excusable neglect." Kyle v. Campbell Soup

22 Co., 28 F.3d 928, 931 (9th Cir. 1994), citing Pioneer Investment Services Co. v. Brunswick

23 Assocs. Ltd. Partnership, 507 U.S. 380, 395 (1993).  Assuming there was ambiguity in the phone

24 conversation and Mr. Vote genuinely though the OSC was vacated, the rule outlined in Kyle and

25 Pioneer should apply.

26      Defendants cite to a Ninth Circuit case for the proposition that "counsel's failure to file

27 an answer on time or respond to OSC was not 'excusable neglect' warranting relief from

28 dismissal order." Doc. 33, Opposition, at 7:12-13, citing Speiser, Krause & Madole P.C. v. Ortiz,

**6**

1   271 F.3d 884, 886 (9th Cir. 2001).  The court notes that Speiser was a case involving a fee

2   dispute between attorneys.  At the trial court level, it appears that the parties represented

3   themselves. See Speiser, Krause & Madole P.C. v. Ortiz, 271 F.3d 884, 887 (9th Cir. 2001) ("the

4   failure of this lawyer, who was the removing party").  Any mistake or neglect could be directly

5   attributed to the party.  Some other cases cited by Defendants share this unity. See Ferdik v.

6   Bonzelet, 963 F.2d 1258, 1259 (9th Cir. 1992); Ghazali v. Moran, 46 F.3d 52, 53 (9th Cir. 1995).

7   Where the party and its counsel are separate entities, a different analysis may apply.

8       In recognition of that distinction, the court analyzes the motion under the assumption that

9   McCormick Barstow knew that the OSC hearing would be held and ignored it completely.

10  Setting aside the Order would be appropriate under Rule 60(b)(6) due to gross negligence on the

11  part of McCormick Barstow.  The Ninth Circuit has stated that "[c]lause 60(b)(6) is residual and

12  'must be read as being exclusive of the preceding clauses.' In addition, the clause is reserved for

13  'extraordinary circumstances.'" LaFarge Conseils et Etudes, S.A. v. Kaiser Cement, 791 F.2d

14  1334, 1338 (9th Cir. 1986), quoting Corex Corp. v. United States, 638 F.2d 119 (9th Cir. 1981).

15  Ordinarily, parties are bound by their counsels' actions, but the U.S. Supreme Court left some

16  ambiguity with Rule 60(b) motions. See Link v. Wabash R. Co., 370 U.S. 626, 635 (1962) ("Nor

17  need we consider whether the District Court would have been abusing its discretion had it

18  rejected a motion under Rule 60(b) which was accompanied by a more adequate explanation for

19  the absence of petitioner's counsel from the pretrial conference").  Though there is some

20  disagreement among the federal circuit courts, the Ninth Circuit has held that gross negligence on

21  the part of counsel has established the requisite "extraordinary circumstances" to set aside a

22  default judgment under Rule 60(b)(6). Community Dental v. Tani, 282 F.3d 1164, 1169 (9th Cir.

23  2002).  Where the punishment is loss of a case without an examination of its merits, courts have

24  been sympathetic to clients whose attorneys are, in effect, "AWOL."  In one case, an attorney

25  filed a late answer based on a claimed stipulation between the parties though the documentary

26  evidence showed that the deadline had passed.  The court found that "there is no basis in the

27  record for finding that the present case involved a deliberate attempt by [the client] to delay the

28  proceedings. Although a party who chooses an attorney takes the risk of suffering from the

attorney's incompetence, we do not believe that this record exhibits circumstances in which a client should suffer the ultimate sanction of losing his case without any consideration of the merits because of his attorney's neglect and inattention." <u>Shepard Claims Service, Inc. v. William Darrah & Associates</u>, 796 F.2d 190, 195 (6th Cir. 1986). The Third Circuit has found that failing to oppose a summary judgment motion is the equivalent of leaving a client effectively unrepresented and can constitute gross negligence. <u>Boughner v. Secretary of Health, Education & Welfare</u>, 572 F.2d 976, 978 (3rd Cir. 1978). In the situation at hand, it would be fundamentally unfair to punish the client for McCormick Barstow's failure to respond to the court's OSC.

## IV. Order

Plaintiff's motion is GRANTED. The March 6, 2007 order dismissing the case for failure to prosecute and accompanying judgment are set aside nunc pro tunc.

Defendants' motions for attorneys fees and to have the arbitration dismissed are DENIED as MOOT.

IT IS SO ORDERED.

**Dated:     June 12, 2007**                          **/s/ Anthony W. Ishii**
                                                      UNITED STATES DISTRICT JUDGE